CAPAC BUS DRIVERS ASSOCIATION v CAPAC COMMUNITY
SCHOOLS BOARD OF EDUCATION

Docket No. 75112. Submitted June 20, 1984, at Lansing.—Decided
February 5, 1985.

The Capac Community Schools Board of Education had a collective-bargaining agreement with the Capac Bus Drivers Association, collective-bargaining agent for school bus drivers employed by the board, covering the period of August 21, 1980, through August 20, 1982. The agreement had a provision providing for the automatic renewal of the agreement for a further two years unless notice of termination was given by either party to the other at least 30 days prior to the end of the original contract period. On September 1, 1982, the association sent a letter to the board in care of the superintendent of schools stating that the association was ready to negotiate a new contract. On the following day the superintendent informed the association by letter that upon receipt of a list designating the association's negotiating team and current officers, he would contact the association concerning possible negotiation dates. Prior to the first negotiation date on September 23, 1982, the superintendent became aware of the automatic renewal provision of the 1980-1982 contract and determined that, because there had not been a timely notice of termination, the 1980-1982 contract had been automatically renewed for another two years. At the September 23 meeting, the superintendent mentioned that he thought that the 1980-1982 contract was still in effect, although he did not specifically mention the automatic renewal provision of the 1980-1982 contract. On September 24, the superintendent contacted counsel for the board. At the scheduled September 30 negotiation meeting with the association, the superintendent notified the association that the 1980-1982 contract had been automatically renewed pursuant to the renewal provision in that contract and

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 845.

48A Am Jur 2d, Labor and Labor Relations § 1759 et seq.

[2] 17 Am Jur 2d, Contracts § 458 et seq.

48A Am Jur 2d, Labor and Labor Relations § 1916.

that all the provisions contained in the 1980-1982 contract concerning hours, wages and other conditions would remain in full force and effect. The association filed an unfair labor practice charge pursuant to the provisions of the public employment relations act, claiming that the school board was unlawfully refusing to bargain collectively as required by law. The hearing officer for the Michigan Employment Relations Commission found that the board had promptly notified the association of its position with regard to the untimely notice and was therefore not remiss in its bargaining duties since there was a valid agreement already in place. On review of the hearing officer's decision, the Michigan Employment Relations Commission held that the failure of the board to assert within a reasonable time that the 1980-1982 contract had been renewed by the failure of the association to give timely notice operated to waive its right to assert that there had been a renewal of the prior contract and, accordingly, it was an unfair labor practice for the board to refuse to negotiate with the association on a new contract. The school board appealed. *Held:*

1. The Court of Appeals is bound by factual determinations of the Michigan Employment Relations Commission; however, since the underlying facts here were undisputed, the question presented was a matter of law.

2. The notice requirement of an automatic renewal clause in a collective-bargaining agreement should not be held to be waived absent a mutual agreement between the parties to do so where the party seeking to assert that the agreement had been renewed did not wait an unreasonable period of time before informing the other party of the intention to treat the collective-bargaining agreement as being renewed by reason of the other party's failure to give timely notice of termination.

3. Since the 1980-1982 contract was renewed automatically when the association failed to give timely notice of termination, the board properly refused to enter into further negotiations on a new agreement. Accordingly, the board's refusal to negotiate was neither unlawful nor an unfair labor practice.

Reversed.

1. LABOR RELATIONS — MICHIGAN EMPLOYMENT RELATIONS COMMISSION — APPEAL.

The Court of Appeals may reverse decisions of the Michigan Employment Relations Commission only if the decision is contrary to law or not supported by competent, material and substantial evidence on the record as a whole; where there is no dispute as to the underlying facts, questions presented on

appeal are to be treated as matters of law (Const 1963, art 6, § 28; MCL 423.216[e]; MSA 17.455[16][e]).

2. LABOR RELATIONS — CONTRACTS — AUTOMATIC RENEWAL — WAIVER.

A provision in a contract providing that the existing contract will be automatically renewed unless notice of termination is given by either of the parties in a specified manner cannot be waived absent a mutual agreement between the parties to do so; accordingly, absent an express agreement between an employer and the collective-bargaining agent of the employees waiving an automatic renewal provision in a contract, a contract providing for automatic renewal, as a matter of law, will be deemed to have been renewed by the failure to give the contractually required notice even where the party asserting renewal does not immediately claim that the prior contract was automatically renewed, providing that such a claim is asserted prior to the matter being taken to the Michigan Employment Relations Commission on an unfair labor practice charge.

*Penzien & Davis* (by *Bernard P. Penzien),* for charging party.

*Thrun, Maatsch & Nordberg, P.C.* (by *Kevin S. Harty & David J. Riewald),* for respondent.

Before: MacKENZIE, P.J., and BEASLEY and J. KIRWAN,* JJ.

PER CURIAM. The Board of Education for the Capac Community Schools appeals as of right from a decision and order of the Michigan Employment Relations Commission which found the board in violation of § 10(1)(e) of the public employment relations act, MCL 423.210(1)(e); MSA 17.455(10)(1)(e), for refusing to bargain collectively with appellee Capac Bus Drivers Association.

The association is the exclusive representative of school bus drivers employed by appellant board. A collective-bargaining agreement was entered into by the parties on February 12, 1981, for the period

---

* Circuit judge, sitting on the Court of Appeals by assignment.

from August 21, 1980, through August 20, 1982. The termination clause of this agreement contains the following automatic-renewal language:

"This agreement and its provision shall become effective August 21, 1980, and remain in full force and effect through August 20, 1982, and thereafter for successive two (2) years unless notice of termination is given in writing by either authorized party to the other thirty days prior to its normal date of renewal". Article XIII.

Thus, the contract provided that it would automatically renew for a two-year period unless written notice of contract termination was given by either party 30 days prior to August 20, 1982.

On September 1, 1982, the association sent a letter to the board in care of the superintendent of schools stating that it was ready to negotiate a new contract. In a response dated September 2, 1982, the superintendent wrote that, upon his receipt of a list of the association's negotiating team and current officers, he would contact it with regard to possible negotiation dates. This information was provided by the association on September 6, 1982, and shortly thereafter the parties agreed on dates for two negotiating sessions.

Prior to the first meeting, set for September 23, the association delivered a list of proposals to the superintendent's office for board review. While reading the proposals the superintendent became aware of the automatic renewal provision in the 1980-1982 contract and, after comparing dates, decided that, because the association's notice was untimely, the contract had been automatically renewed.

The September 23 meeting involved a presentation by the association of its list of proposals. While there appears to be some dispute as to what

was actually said by the superintendent at this meeting regarding the automatic renewal provision, the record indicates that although the phrase "automatic renewal provision" was not mentioned by the superintendent, he did indicate that he felt the 1980-1982 contract was still in effect.

The superintendent contacted counsel for the board on the next day, September 24, concerning the interpretation of the automatic renewal language. At the second scheduled meeting, September 30, the superintendent provided the association's representatives with a letter stating that the contract had become automatically renewed pursuant to Article XIII and therefore all the provisions in the 1980-1982 contract concerning hours, wages, and other conditions of employment would remain in full force and effect. Further discussion at the meeting was limited to implementation or clarification of the existing contract. Shortly after this meeting, the association initiated a grievance which ultimately resulted in the filing of an unfair labor practice charge against the board.

The MERC hearing officer, in an opinion dated June 3, 1983, found that the board had "promptly notified" the association of its position with regard to the untimely notice and therefore held that the board was not remiss in the bargaining duties, as a valid agreement was already in place. This was subsequently overturned by the MERC on November 10, 1983.

On appeal to this Court the association agrees that its notification of September 1, 1982, was sent 43 days after the deadline which the automatic renewal clause provided and was therefore untimely. The association argues, however, that the actions of the board following its receipt of the notification in effect waived the 30-day notice requirement. As a result, the 1980-1982 contract was

not automatically renewed and the board, by refusing to discuss economic concerns, unlawfully failed to bargain with the association in violation of the PERA, specifically MCL 423.210(1)(e); MSA 17.455(10)(1)(e), which provides in pertinent part: "It shall be unlawful for a public employer or an officer or agent of a public employer * * * to refuse to bargain collectively with the representatives of its public employees * * *".

In reviewing a final decision of an administrative agency, we are mindful of the limited role afforded us on appeal. Out of due deference for agency expertise on matters within its jurisdiction, an appellate court may reverse the final decision of an administrative agency only where it is found to be contrary to law or unsupported by competent, material, and substantial evidence on the record as a whole. Const 1963, art 6, § 28; MCL 423.216(e); MSA 17.455(16)(e); *Chrysler Corp v Sellers,* 105 Mich App 715; 307 NW2d 708 (1981). If there is no dispute as to underlying facts, questions presented on appeal are to be treated as matters of law. *Chrysler Corp, supra,* p 720.

Although there appear to be no Michigan judicial opinions directly on point, the waiver issue in this context has been addressed on numerous occasions by both the MERC and the National Labor Relations Board.

In *Body Crafters Federal Credit Union,* 5 MERC Lab Op 906 (1970), the parties had entered into an agreement which contained a clause providing for automatic renewal of the contract if written notice of termination was not received at least sixty days prior to the given expiration date. Timely notice was not sent. Initially unaware that the contract contained such an automatic renewal clause, the employer received a list of tentative proposals from the union and arranged for a meeting. The

first meeting was spent discussing the union's proposals and a second meeting date was set. While reviewing these proposals prior to the second meeting, the employer discovered that proper notice had not been received as required and that, as a result, the contract had been automatically renewed. The union was notified of this more than two weeks after the initial meeting had taken place. The MERC, upon finding that no mutual agreement had been reached by the parties concerning waiver of the automatic renewal clause, held that the employer's actions following the date on which the renewal notice was to be given did not amount to a waiver.

Similarly, it was held in both *Riverside Osteopathic Hospital,* 8 MERC Lab Op 957 (1973), and *Detroit Urban League,* 6 MERC Lab Op 25 (1971), that a number of meetings and correspondence between the union and employer did not obviate the renewal provisions of the collective-bargaining agreements, absent a mutual agreement to modify and negotiate a new contract. More recently, in *Village of Franklin,* 18 MERC Lab Op 865 (1983), the MERC held that an employer who receives an untimely notice of termination and thereafter maintains that the contract has been automatically renewed may nonetheless accept wage proposals from the union without waiving its right to enforce the automatic renewal provision.

The NLRB has also addressed the issue of waiver in similar factual settings. See, *e.g., General Maintenance Service Co, Inc,* 182 NLRB 819; 76 LRRM 1332 (1970); *Sawyer Stores, Inc,* 190 NLRB 651; 77 LRRM 1434 (1971); *Anchorage Laundry & Dry Cleaning Ass'n, Inc,* 216 NLRB 114; 88 LRRM 1219 (1975), and *Hassett Maintenance Corp,* 260 NLRB 1211; 109 LRRM 1273 (1982). After reviewing these cases, we note that

the NLRB found waivers of untimely notice only where that issue was first raised by the employers as a defense at the board hearing level, not before. This indicates that the involved parties in fact agreed to treat the untimely notice as effective throughout the entire course of their negotiations up to the time of agency involvement, a situation we do not find here. While these decisions are by no means controlling precedent for this Court, the NLRB's interpretations of the National Labor Relations Act, upon which our own PERA was substantially patterned, are certainly useful guides to aid us in our determinations. *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 53; 214 NW2d 803 (1974); *Mt Clemens Fire Fighters Union, Local 838, IAFF v Mt Clemens,* 58 Mich App 635, 645; 228 NW2d 500 (1975).

In light of the above discussions, we adopt the reasoning of the MERC in *Body Crafters, supra,* and hold that the notice requirement of an automatic renewal clause cannot be waived absent a mutual agreement between the parties to do so.

Turning to the case before us, we cannot say as a matter of law that any mutual agreement existed between the parties. Upon discovering that the contract had been automatically renewed due to the association's untimely notice, the board, after conferring with legal counsel, promptly notified the association of its position. Even assuming that no mention of the automatic renewal clause was specifically made at the first meeting, it cannot be maintained that the union was thereafter drawn into extensive negotiations, especially here where the board offered no counter proposals. If any doubts existed as to the board's intentions after the first meeting, they were quickly laid to rest by way of written explanation at the second meeting one week later, long before any agency

involvement. Once the issue of automatic renewal was raised, the board steadfastly refused to bargain on that very basis. Nor can we say that the union was misled to its detriment in any other way by the board's actions.

Decision of the MERC reversed.