SAGINAW STAGE EMPLOYEES LOCAL 35, IATSE v CITY OF
SAGINAW

Docket No. 79406. Submitted March 21, 1985, at Lansing.—Decided
February 20, 1986. Leave to appeal denied, 425 Mich 873.

The Saginaw Stage Employees Local 35, IATSE, filed a charge
with the Employment Relations Commission against the City of
Saginaw, alleging that the city refused to bargain with the
union. Prior to July, 1982, the union's members, by contract,
were the only individuals, with the exception of a few full-time
employees, who were used for shows at the Saginaw Civic
Center. Afterward, the city employed 12 part-time employees to
perform the work previously performed by the full-time stage-
hands and the union's members. Tenants who stage events at
the Saginaw Civic Center are no longer obligated, as they were
in the past, to use only the union members. Prior to July, 1982,
when, based on a tenant's requirements, additional help was
needed at the civic center, either a city stagehand or the
tenant, per instructions from the city, would contact the union.
Whoever called would inform the union of the needs for a
particular show. The union's business agent would determine
who would work a particular show. The union would send a
steward only if the number of union members requested had
reached a certain amount. If a steward was sent, he supervised,
after being given instructions concerning the specific needs of a
show. If a steward was not present, city stagehands would
direct the union members. The union members were paid by
the hour. Payment was made in a lump sum to the union and
then disbursed by the union to its members. If an event in
which the union members worked involved no ticket sales,
payment was made directly from the tenant to the union.
Following events in which tickets were sold, the civic center
paid the union a lump sum from an escrow account established
from ticket sales. The union did all hiring and screening of
applicants. The union's business agent determined the classifi-

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 579-599, 2274, 2275.
See the annotations in the ALR3d/4th Quick Index under Labor
and Labor Unions; Master and Servant.

cation of individual workers. The city never fired or disciplined a member of the union. Occasionally, the city would specify persons from the union whom they did or did not want to work a show, but this was done only when requests were made by the tenant. The Employment Relations Commission concluded that the union members were employees of the city and that the city had a duty to bargain. The city appealed. *Held:*

The general characteristics identifying employees are: (1) that they select and engage the employee; (2) that they pay the wages; (3) that they have the power of dismissal; and (4) that they have power and control over the employee's conduct. The union members were not employees of the city and the city had no duty to bargain.

Reversed.

R. M. MAHER, J., dissented. He would hold that the commission's decision was authorized by law and supported by competent, material and substantial evidence on the record as a whole. He would affirm.

1. APPEAL — EMPLOYMENT RELATIONS COMMISSION — CONSTITUTIONAL LAW.

The Court of Appeals reviews decisions of the Michigan Employment Relations Commission by determining whether the decision is authorized by law and whether the commission's findings are supported by competent, material, and substantial evidence on the whole record (Const 1963, art 6, § 28; MCL 423.23, subds [e] and [f]; MSA 17.454[25], subds [e] and [f]).

2. LABOR RELATIONS — MASTER AND SERVANT — EMPLOYEES.

The general characteristics identifying employers are: (1) that they select and engage the employee; (2) that they pay the wages; (3) that they have the power of dismissal; and (4) that they have power and control over the employee's conduct.

*Borrello, Thomas & Jensen, P.C.* (by *Leopold P. Borrello*), for plaintiff.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *Robert A. Kendrick*), for defendant.

Before: R. B. BURNS, P.J., and R. M. MAHER and G. R. DENEWETH,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

Per Curiam. The City of Saginaw appeals as of right from and adverse determination by the Michigan Employment Relations Commission (MERC). The Saginaw Stage Employees Local 35, IATSE had filed the charge with MERC alleging that the city had refused to bargain with the union, contrary to § 10 of the public employment relations act, MCL 423.210(1)(e); MSA 17.455(10)(1)(e).

The union's members include stagehands, sound and light technicians, projectionists, and other individuals needed to stage theatrical events. Union members were called to perform stagehand work at the Saginaw Civic Center whenever personnel were needed beyond the few full-time stagehands who were employees of the city. Prior to July, 1982, the union's members, by contract, were the only individuals, with the exception of the previously mentioned full-time employees, who were used for shows at the Saginaw Civic Center. Now the city employs 12 part-time employees to perform the work previously performed by the full-time stagehands and the union's members. Tenants who stage events at the Saginaw Civic Center are no longer obligated, as they were in the past, to use only the union's members.

Review of decisions by MERC involves a determination of whether the decision is authorized by law and whether the commission's findings are supported by competent, material, and substantial evidence on the whole record. *Michigan Educational Support Personnel Ass'n v Evart Public Schools,* 125 Mich App 71, 73; 336 NW2d 235 (1983); Const 1963, art 6, § 28; MCL 423.23 subds (e) and (f); MSA 17.454(25) subds (e) and (f). MERC's decision concluded that the union members were employees of the city. We disagree and find that MERC was in error in so holding.

The general characteristics of employers are: (1)

that they select and engage the employee; (2) that they pay the wages; (3) that they have the power of dismissal; and (4) that they have power and control over the employee's conduct. *AFSCME v St Clair County*, 136 Mich App 721, 736; 357 NW2d 750 (1984), *lv granted* 422 Mich 856 (1985), quoting from *Wayne County Civil Service Comm v Wayne County Bd of Supervisors*, 22 Mich App 287, 294; 177 NW2d 449 (1970), *rev'd in part* 384 Mich 363; 184 NW2d 201 (1971).

Prior to July, 1982, when, based on a tenant's requirements, additional help was needed at the civic center, either a city stagehand or the tenant, per instructions from the city, would contact the union. Whoever called would inform the union of the needs for a particular show, such as the number of stagehands, truckloaders, riggers, and sound and light technicians. The union's business agent would determine who would work a particular show. The union would send a steward only if the number of union members requested had reached a certain amount. If a steward was sent, he supervised, after being given instructions concerning the specific needs of a show. If a steward was not present, city stagehands would direct the union members.

The union members were paid by the hour. Payment was made in a lump sum to the union and then disbursed by the union to its members. If an event in which the union members worked involved no ticket sales, payment was made directly from the tenant to the union. Following events in which tickets were sold, the civic center paid the union a lump sum from an escrow account established from ticket sales.

The union did all hiring and screening of applicants. The union's business agent determined the classification of individual workers. The city never

fired or disciplined a member of the union. Occasionally, the city would specify persons from the union whom they did nor did not want to work a show, but this was done only when requests were made by the tenant.

On these facts, we find that the City of Saginaw was not the employer of the union members. The union determined who worked each show, the tenants paid the wages of the union members, and the city never fired a member of the union. The only time the city had control over the conduct of the union members was when a particular show did not require a large enough number of stagehands to merit sending a union steward to supervise the union members. Thus, based on the *Wayne County* factors, the city was not the employer and therefore was under no duty to bargain with the union.

Our resolution of this issue makes it unnecessary to address whether the union members were casual employees of the city.

Reversed.

R. M. MAHER, J. *(dissenting)*. I respectfully dissent from the majority opinion reversing the decision of the Michigan Employment Relations Commission. I believe that the commission's decision that the city was the employer of the union's members and that not all of the stagehands were casual employees is authorized by law and supported by competent, material and substantial evidence on the record as a whole. *Capac Bus Drivers Ass'n v Capac Bd of Ed,* 140 Mich App 542, 547; 364 NW2d 739 (1985).